## Sager, Guardian, *versus* Galloway et al.

1. A devise of property, when devisee arrives at the age of twenty-one, with a devise over in case he does not attain that age, without any reference to his having or not having issue, and when no provision is made for devisee during his minority, is contingent and does not vest until he arrives at the age of twenty-one, unless there be something else in the will indicating an actual intention of the testator to the contrary.

2. A devisee of a contingent remainder cannot maintain an action for damages in the nature of waste.

May 25th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Warren county:* Of July Term 1885, No. 35.

This was an action of trespass on the case for waste brought by Elizabeth Sager, guardian of Cobham Bolton Hargraves

Sager against John Galloway, The Anchor Oil Company and The National Transit Company.

George A. Cobham died October 6th, 1870, seised of a large tract of real estate in Warren county, leaving to survive him three daughters—Georgena Catherine, Elizabeth, wife of John Sager, and Alice, and a step-son, Henry Cobham, who was also his nephew. By his will dated September 28th, 1870 he devised his real estate in Warren county in trust for his three daughters and Henry Cobham for their natural lives and the survivor of them.

The first count in the declaration charged that under the last will and testament of George Ashworth Cobham, deceased, the plaintiff was the owner of an estate in fee, in remainder, of certain lands particularly described, and being parts of Cobham Park, which said estate was to be enjoyed in possession immediately after the determination of a certain particular estate created in Henry Cobham, Georgena Catherine Cobham, John Cobham and Rasselas Brown, their heirs and assigns, as trustees and executors upon the trusts in the said will contained, and upon the said plaintiff arriving at the age of twenty-one years; that the defendants herein, acting under and by the direction of the *cestui que trustent*, who were the owners of the particular estate mentioned, have committed waste upon the lands by the sinking of wells, obtaining oil, and running the same, to the injury of the estate in remainder. The second and third counts charged the possession of the land in the tenants for life, and the same acts with the like injury.

The defendants pleaded the general issue.

The following is so much of the last will and testament of George Ashworth Cobham as is material to the determination of this case.

19. Now as to, for and concerning my house and grounds known as Cobham Park, after the decease of the said Henry Cobham, Georgena Catherine Cobham, Elizabeth Sager and Alice Cobham, and the surviver of them, I hereby give and devise the same, together with the furniture, plate, linen, china, pictures, library, articles of vertu, together with all my horses, cows, carriages, wagons, sleighs, and implements of husbandry, unto the eldest son of my daughter Georgena Catherine Cobham, and to his heirs and assigns forever. And if she shall not have a son, I give and devise the same to the eldest son of my said daughter, Elizabeth Sager, and to his heirs and assigns forever. And in case she should not have a son, I give and devise the same to the eldest son of my daughter Alice Cobham, and to his heirs and assigns forever. And in case she shall not have a son, then I give and devise the same

to the eldest son of the said Henry Cobham, and to his heirs and assigns forever. And in case Henry Cobham shall not have a son, then I hereby give and devise the same to the eldest daughter of my daughter Georgena Catherine Cobham. And if she should not have a daughter, then I give and devise the same to the eldest daughter of my said daughter Elizabeth Sager. And if she should not have a daughter, I give and devise the same to the eldest daughter of my daughter Alice Cobham. And if she should not have a daughter, I give and devise the same to the eldest daughter of the said Henry Cobham. And in case the said Henry Cobham shall die without lawful issue, him surviving, upon trust, to hold the same to the eldest son of the said John Cobham, and in case the said John Cobham shall die without having a son, him surviving, upon trust, to hold the same to the eldest son or daughter of my niece, Isabella Hargraves Mawson, and to his or her heirs and assigns forever, subject to the proviso hereinbefore and hereinafter written, in all which devises above named to the sons of my before named daughters and son Henry, and to my said nephew and niece, it is my meaning and intention, that if a son, he shall take the same when he arrives at the age of twenty-one years, and if he dies before that age, the devise passes to the son of my next daughter, and so on as before specified. And if a daughter, upon trust, that my said trustees shall have the same settled upon such daughter of any of my before named daughters, or of the said Henry Cobham, or of my said niece, who may become entitled thereto by a settlement on her marriage, so that she cannot be deprived of the same, and to her heirs and assigns.

20. And as to, for and concerning the residue of my property, real, personal and mixed, and the accumulations, and all houses, barns, out-buildings and other improvements which may have been made thereon, after the death of my said daughters, Georgena Catherine Cobham, Elizabeth Sager, Alice Cobham, and the said Henry Cobham, upon trust, to divide them into equal parts, and divide them equally amongst the children of all my said daughters and Henry Cobham, in such manner as each of my said daughters and son Henry may, by their respective last will and testament, properly executed, give or devise the same; but in case of the failure of any of my said daughters and son Henry to make a last will and testament, that then the same shall be divided equally amongst the children of all of them, each child or children to receive the portion or share of his, her, or their parent. The oldest son or daughter who takes the house and grounds called Cobham Park not to be entitled to share in such division. Provided, always, that the son of any of my before-named daughters, or of

my niece Isabella Hargraves Mawson, who may become entitled to the said Fearnes and Tunstead estates, or of the house and grounds called Cobham Park, shall use and bear the name of Cobham, and use the coat of arms or armorial ensigns of the Cobham family.

21. And in case there should be no issue of the said Henry Cobham or of my said daughters, Georgena Catherine Cobham, Elizabeth Sager and Alice Cobham, them surviving; or, dying before they arrive at the age of twenty-one years, then and in that case I direct my said trustees to hold all my messuages, or dwelling house and grounds known as Cobham Park, together with the furniture, plate and other articles devised, that my son Henry and daughters should occupy and use during their lives, as hereinbefore specified, unto the oldest son of my said nephew, John Cobham, and in case the said John Cobham shall die without leaving a son capable of taking this devise, upon trust to hold the same to the eldest son or daughter of my neice Isabella Hargraves Mawson, his or her heirs and assigns. On this express condition that the son of either of them, my said nephew or niece, or the daughter of my said niece, who may become entitled to the above named prorerty, shall take up his or her residence at Cobham Park, Warren county, Pennsylvania, reside there at least one half of every year, and that he or she shall not be entitled to merely look at the same and sell or raise money on it, but that he or she shall settle down and live in my said residence and make it their permanent home, in which case my said trustees are authorized to convey the property herein devised to such person as may become entitled thereto under the provisions of this will, taking such bonds or obligations from them as will create a forfeiture of the Cobham Park property and the said Fearnes and Tunstead estates by their not residing at Cobham Park as before named, and on the due execution of such bond or other instrument upon trust that my said trustees shall make a division of all the residue of my other lands, houses, barns, hereditaments and premises which I am entitled to, and all other my real, personal and mixed property, so vested in them, and all accumulations thereof unto and amongst the children of my said nephew and niece, share and share alike, the son or daughter taking the devise of the house and grounds known as Cobham Park to take no share with his or her brothers and sisters.

22. And in case there shall be no son of my said nephew John Cobham, or no son or daughter of my niece ·the said Isabella Hargraves Mawson, or that they refuse to take up their permanent residence at Cobham Park as before written, then and in such case upon trust to have and to hold the

above named estates called the Fearnes and Tunstead estates situate is Rossendale in the Kingdom of England, and my house and grounds knows as Cobham Park, and all other, my real and personal estate, and all accumulations thereof, situate in the United States of America before devised to them upon trust to convert my house into a seat of learning to bring up, educate and place in suitable situations in the world, as many orphan children of both sexes as the funds will allow them to do.

The defendants claimed under a lease from Ann Cobham, trustee, and Henry Cobham, granting the right to bore for oil and gas for the term of seven years, paying therefor the one-eighth of all the oil and gas obtained.

Georgena Catherine Cobham died without issue about the 7th of August, 1882, and it is not controverted that Cobham Bolton Hargraves Sager is the oldest son of Elizabeth Cobham, *nee* Sager, and as such entitled to the estate in remainder, particularly described in the nineteenth item of the will. Their child is now ten years of age, and was not born until at least two years after an agreement for partition had been fully consummated.

After the plaintiff had closed, the defendants moved for a compulsory nonsuit, for the following reasons, *inter alia:*

2. That plaintiff's ward's interest under said will is not vested, but contingent upon his arriving at the age of twenty-one years, and this contingency has not yet arrived.

3. That the title under the will, if any exists, is in the trustees under an active trust. The remedy of plaintiff's ward, if any he has, is against the trustees, or for their removal. He can maintain no action against these defendants.

4. The life estate, prior to the estate of plaintiff's ward, is without impeachment of waste, so far as the taking of oil is concerned, and hence this action does not lie.

The Court, TAYLOR, P. J., granted a nonsuit, and on motion refused to take it off.

The plaintiff thereupon took this writ, assigning for error the refusal of the Court to take off the nonsuit.

*George A. Jenks* and *J. H. Donley* (*S. T. Neill* with them), for plaintiff in error.—The defendants' counsel contend, according to the second reason stated in their motion for nonsuit, "That plaintiff's ward's interest under said will is not vested, but contingent upon his arriving at the age of twenty-one years, and this contingency has not yet arrived. For centuries the rule of construction has prevailed, favoring the vesting of estates in remainder at the earliest possible period: Boraston's Case, 3 Rep., 19. A remainder becomes vested as soon as

there is any one in existence capable of taking: Lantz v. Trusler, 1 Wr., 482; Chew's Appeal, Id., 23; Young v. Stern, Id., 105; Minnig v. Batdorf, 5 Barr, 503; Manderson v. Lukens, 11 Har., 31; Letchworth's Appeal, 6 Casey, 75; Kerlin v. Bull, 1 Dal., 177; McArthur v. Scott, 113 U. S., 340; Goodtitle v. Whitby, 2 Burrows, 228; Doe v. Moore, 14 East, 600. The testator gave to John Moore, "when he attained the age of 21 years," all his estate, &c., but in case he should die before he attains the age of 21 years then he gives it over. The testator died leaving the plaintiff's lessors as his heirs, and the devisee in the will was under age. And the question submitted was what estate, if any, did plaintiffs take. The case was argued in 1807, and stood over until 1811, awaiting the decision of the House of Lords in Bromfield v. Crowder, *infra.* It was finally held that a devise to A., when he attains the age of 21 years, to hold to him and his heirs, and if he dies under 21 then over, does not make the devisee's attaining 21 a condition precedent to the vesting of the estate in him, but a condition subsequent, on which the estate may be divested: 2 Thomas on Coke, 107, and note. The rule as stated in Linton v. Laycock, *infra,* seems to cover the whole ground: "The words of futurity importing contingency are not regarded as a condition precedent or postponing the period of vesting, but as specifying the time when the remainder man is to take possession." See also 4 Kent's Com., 7th edition, 217, *206 and note; Fearne on Remainders, 349 *et seq.;* Doe v. Perryn, 3 Term Rep., 484; Barnes v. Provoost, 4 Johns. R., 61; Moore v. Lyons, 25 Wend., 119; Linton v. Laycock, 33 Ohio, 128; Doe v. Considine, 6 Wall., 458; Cropley v. Cooper, 19 Wall., 167; McArthur v. Scott, 113 U. S., 380; Roome v. Phillips, 24 N. Y., 463; Bromfield v. Crowder, 4 Bos. and Pul., 313.

The estate of the devisee in this case was to him and to his heirs and assigns forever. It was an absolute, inindefeasible estate. There are not only words of inheritance, but also the word "assigns," granting full power of alienation. Whether it is a vested equitable remainder, or a vested remainder in fee, makes no difference. The testator has used technical words having a known legal import, and these in expressing his primary or paramount general intent to devise an indefeasible estate, and the secondary or minor intent to limit this estate by a devise over, gives way: Doebler's Appeal, 14 P. F. S., 14; Karker's Appeal, 10 P. F. S., 141; McCarthy v. Dawson, 1 Whar., 4; Williams v. Leach, 4 Casey, 89; Doe v. Considine, 6 Wall., 458, is full to the point here.

But whether the plaintiff's estate in remainder was liable to be divested by condition subsequent, or was an absolute in-

defeasible estate in him and his heirs and assigns forever, is immaterial however, as in either case he could maintain this action, if in other respects well brought.

*Lindsey* (*Johnson & Parmlee, Brown & Stone, Wetmore, Noyes & Hinckley* and *H. McSweeney* with him), for defendants in error.

*John G. Hall* (*W. G. Trunkey* and *Wilbur & Schum* with him), for other parties interested.—That plaintiff's ward's interest under said will is not vested, but contingent upon his arriving at the age of 21, and this contingency has not yet arrived.

Is the interest of the plaintiff vested or contingent? If the latter, this suit cannot be maintained: Washburn on Real Prop., 4th edition, 120. 1 Fearne, 3, defines a contingent remainder as "a remainder limited so as to depend on an event or condition which may never happen or be performed, or which may not happen or be performed till after the determination of the preceding estate.

A remainder is contingent where the condition upon which it is limited is certain in event, but the determination of the particular estate may happen before it: 1 Fearne, 4; 4 Kent, 207.

Where the devise or bequest is to a person when, or as soon as he shall attain a given age, or at or upon or from and after attaining such age, the interest will be contingent until he attains the age specified. The present capacity of taking effect in possession, if the possession will need to become vacant, universally distinguishes a vested from a contingent remainder: 2 Washburn Real Prop., 228; 1 Fearne, 216, 217.°

The estate is contingent where it is limited to a person not ascertained: 9 Fearne, 217; Abbott *et al. v.* Jenkins, 10 S. & R., 296; McBride *v.* Smyth, 4 P. F. S., 245; Buzby's Appeal, 11 Id., 111; Fairfax's Appeal, 13 W. N. C., 274.

Even in the case of McArthur *v.* Scott, 113 U. S. Rep., 340, so much relied on by appellant, there was not only no devise over, but the testator directed the income to be divided annually among his five children living at his death, and their children until the youngest grandchild became of age—both the distinguishing features which make a remainder contingent being wanting.

In Manderson *v.* Lukens, 11 Harris, 34, another of the appellant's citations, LOWRIE, J., says: "An unpossessed estate is vested, if it is certain to take effect in possession, by enduring longer than the precedent estate. Any additional contingency destroys its vested character."

The appellant has no right to the present enjoyment, nor to

any future enjoyment of the estate, after the life interests terminate, until he arrives at the age of 21 years, "when he shall take the same." The contingency upon which any interest in him depends is the prolongation of his life to the prescribed period—an event entirely uncertain and contingent in its character—which may never occur; and until that period he has no right to the enjoyment of the estate, and, according to the rules deduced from the authorities cited in the argument, he has no vested interest therein, but whatever right or title he may acquire depends on an uncertain and contingent event.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

Cobham Park is the subject of ten devises, the first contingent on the birth and living to a certain age of a son of Georgena Catharine Cobham, and each of the others, on the failure of the preceding devise or devises, and of the being of a person therein described. In the same paragraph the testator declares: " In all which devises above named to the sons of my before named daughters and son Henry, and to my said nephew and niece, it is my meaning and intention that if a son, he shall take the same when he arrives at the age of twenty-one years, and if he dies before that age, the devise passes to the son of the next daughter, and so on as before specified. And if a daughter upon trust, that my said trustees shall have the same settled upon such daughter of any of my before named daughters, or of the said Henry Cobham, or of my said niece, who may become entitled thereto by a settlement on her marriage, so that she cannot be deprived of the same, and to her heirs and assigns."

By the terms of the will when the devisee becomes entitled to take at all, he takes the fee. He shall not possess the property, or enjoy the rents and income, until after the decease of the testator's son and daughters, to whom is given the use and income for life. If they die before he arrives at the age of twenty-one years, he shall neither possess the property, nor enjoy the income, till after that age. Should he die before that age, the devise shall pass to another person. Plainly the devise operates in favor of a described person, his heirs and assigns. It is equally plain that no son of any of the testator's daughters, can possess or enjoy the property in his minority; nor would the estate descend to the heirs of a son who should die before his majority, and it is immaterial whether he were married and left children surviving. How can the meaning of the testator be doubtful? The property is devised to a person in fee when he is twenty-one years of age; and

any person under that age, though answering the description in all other respects, can take nothing, and no person can take through or under him.

It is apparent that the testator employed apt words to express his intention. While not of great importance, it is noticeable that in the clause declaring his intention, " in all which devises," he refers to the giving, not to the property devised. The devises, acts of giving, are numerous, the property given is the same in each. He means that a son shall take the devise " when he arrives at the age of twenty-one years, and if he dies before that age, the devise passes to the son " of his next daughter.

"Devises are governed by the intention of the testator :" Kerlin *v.* Bull, 1 Dall., 189. His intention is to be ascertained from his words in the will ; and the circumstances may aid in determining their meaning. At the date of the will, or of the testator's death, no living person was the object of the devise in fee of Cobham Park. He had no special affection or personal regard for the unborn son or daughter of one of ten persons who might answer the description and take the estate. The first object of his bounty is a son, who shall have lived a certain number of years, of his oldest daughter. Expressly, if the son dies before the end of that time, the devise passes to the next person designated, and so on until it reaches the oldest son or daughter of his niece, who, at any age, may take the estate in fee. Instead of devising Cobham Park to a grandson, if one should be born, to take possession at a certain age if the life estate should then be ended, he devises to such grandson when he arrives at that age ; and if there be no grandchild, as described, the devise passes to a child of his niece. This indicates an intention that the devise should be contingent on the son arriving at the age designated. The query of Lord MANSFIELD in Goodtitle *v.* Whitby, namely, if the object of the testator's bounty, having married, dies before his age of twenty-one, leaving children, could the testator in such event intend to disinherit them, has no point where the testator, in case of death before that age, in plain terms devises the land to another person.

That the fee vests in a grandson when he arrives at the age of twenty-one years, though the life estate in the children may not have ended, and he can have no enjoyment during the existence of such life estate, by the very words of the will, indicates an intention that the remainder should not vest before.

"It is a well known rule that a limitation shall, if possible, be construed to be a remainder rather than an executory devise." And the counsel of the respective parties have treated this devise as creating a remainder.

The law favors the vesting of estates; and where there is doubt as to the point of time at which it was intended the estate should vest, the earliest will be taken. When a testator creates a particular estate, and disposes of the ulterior interest, especially in an event which will determine the prior estate, the words descriptive of such event, occurring in the later devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift. This was the controlling principle in Kerlin v. Bull, *supra*, and in a number of other cases cited at the argument.

In some instances, words seemingly creative of a future interest, have been construed as referring to futurity of possession, occasioned by the carving out of a prior interest, and as pointing to the determination of that interest, when the terms import contingency, and would, unconnected with and unexplained by the prior gift, clearly postpone the vesting: 1 Jarman on Wills, 805. Boraston's Case, 3 Rep., 19, is cited as a leading authority for this construction. In that case, and others following in its wake, the construction was deemed in accord with the testator's intention, evidenced by the prior gift. By all authority, "a devise to A., if or when he shall attain the age of twenty-one years, standing isolated and detached from the context, would confer a contingent interest only." When the context fails to explain the words creative of a future interest as referring to futurity of possession, the devise must be construed as if isolated.

The recent case of McArthur v. Scott, 113 U. S. R., 340, is unlike the present. In that case the whole will was considered in order to ascertain the intention of the testator. It is said that the terms in which the testator expressed his intention, point to a vesting of the remainder, some of which are referred to; among them, the provision that any mortgage, or pledge, or assignment by any grandchild shall be void. There was no need of this provision unless the estate were vested. Moreover, the case came within the settled rule that, "Where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of the particular estate, which estate is to determine by an event that must unavoidably happen by the efflux of time, the remainder vests in interest soon as the remainderman is *in esse* and ascertained; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession.

This plaintiff does not come within the operation of that rule. Were the life tenants all dead he could not take possession. The remainder is not limited to take effect immediately

[Dull's Appeal.]

on the death of the testator's children. It is limited to take effect after their decease, and in favor of a person when he attains a given age. Should he die before arriving at that age no person claiming under him, by descent or otherwise, would have right of possession or property. Although the plaintiff is the person who will be entitled to the property if he lives long enough, the devise passes to him when he arrives at the age of twenty-one years. The particular age is made a constituent part of the description of the object of the devise, and the remainder cannot vest before. The person is not ascertained before the given age.

The present capacity of taking possession, if the possession were to become vacant, distinguishes a vested remainder from one that is contingent. Wherever the remainder is limited to a person not *in esse*, or not ascertained; or wherever it is limited so as to require the concurrence of some dubious, uncertain event, independent of the determination of the preceding estate, and duration of the estate limited in remainder, to give it a capacity of taking effect, the remainder is contingent: Fearne on Rem., 216, 217.

Having no vested interest the plaintiff has no right of action. Therefore, it would be out of place to attempt to dispose of the other points suggested in the assignments of error.

Judgment affirmed.