[L. A. No. 1459. In Bank.—October 11, 1906.]

JOHN L. PAVKOVICH, Appellant, v. SOUTHERN PA-
CIFIC RAILROAD COMPANY et al., Respondents.

Deed of Quarry—Limitation of Purpose—Construction—Reserva-
tion—Condition—Injunction.—A deed of land for the use of a
railroad way to stone quarries, and of the quarry tract, "for the
purpose and with the limitation that the rock and material taken
therefrom by the party of the second part, or by. its lessees or
assigns, is for railroad purposes," and that they are "not to
carry on the business for any other purpose," with a subsequent
condition that the estate is to be forfeited if the railroad is not
constructed to the quarries within two years, is not to be con-
sidered as inconsistent in its provisions; but the "limitation,"
whether considered as a covenant running with the land or not, is
.not in restraint of trade, but is to be taken as qualifying the
estate granted, for the benefit of the grantors, and as in effect
a reservation to be liberally construed in favor of the grantors, and
their successors, and as forbidding the taking of stone for any
other purpose; and equity will, at the suit of the successors of the
grantors, enjoin the taking thereof for the use of a breakwater by
the assigns of the grantee.

Id.—Contingent Interest in Land—Protection against Waste by
Injunction—Damages.—The owner of a contingent future estate
in land is entitled in equity to enjoin a threatened destruction of
the substance of that estate by the tenant in possession, whether

such threatened destruction be total or partial; and when land is conveyed subject to a condition a breach of which will work a forfeiture of the estate granted, the grantor retains an interest in the land the value of which may be impaired by waste; and if the deed expressly limits the purposes for which stone may be taken from a quarry, and which imposes a practical limit to the quantity to be taken, the owner of the contingent estate, though not entitled to recover damages for rock actually removed, is entitled to enjoin further waste in the taking of rock in excess of such limit.

ID.—STIPULATION IN FAVOR OF AND AGAINST GRANTEE.—Where the assigns of the grantee were expressly named in the deed, whatever right the grantors had to protect their interest in the land passed to their grantee and inured in his favor against the assigns of the original grantee. The estate of the grantors was alienable; and their right to sell the estate includes the right to transfer the means of protecting it.

APPEAL from a judgment of the Superior Court of San Bernardino County. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Charles L. Allison, Davis & Rush, and A. W. Hutton, for Appellant.

Bicknell, Gibson & Trask, and Edward E. Bacon, for Respondents.

BEATTY, C. J.—Upon a careful reconsideration of this case after rehearing ordered, we find no occasion to modify our original opinion. Nor do we deem it necessary to undertake a discussion of the proper construction of our code provisions relating to covenants running with the land. Our conclusions are not rested upon those provisions, and they contain nothing inconsistent with what we have decided. Conceding that there is here no covenant running with the land in a strict legal sense, we still hold that the plaintiff, as the owner of a contingent future estate in the land, is entitled in equity to enjoin a threatened destruction of that estate by the tenant in possession, whether such threatened destruction be total or partial. When land is conveyed subject to a condition, breach of which will work a forfeiture of the estate granted, the grantor retains an interest in the land, the value of which will be impaired

by the pulling down of houses, the cutting of timber, or the quarrying and removal of stone or any other valuable material contained in the soil, and it would be strange if the law afforded him no means of protecting his interest. It may be that there is a presumption in such case that there will be no breach of the condition subsequent, and that there is a probability that the estate will never be forfeited, but in dealing with the rights of the grantor a court is bound to assume, as the parties by their deed have assumed, that there may be a breach of the condition, and to hold that the grantee has no right in the mean time to make way with the very substance of the estate. If in such case the deed contained no express provision restraining the removal of the soil, or cutting of timber, or other destructive use of the land, we are clearly of the opinion that a court of equity would enjoin a threatened injury of the magnitude alleged in this case. But here the deed expressly limits the purposes for which the stone may be taken, and this imposes a practical limit to the quantity that will be taken, and the right of the grantor, or his successor, to enjoin the transgression of that limit is even clearer than the right to an injunction would have been in the absence of such express provision. Of course, there are exceptional cases to which the doctrine here asserted does not apply. One of them is defined in section 819 of the Civil Code— the lease of a going mine or quarry. But such exceptions only fortify the general doctrine.

As to the objection so strongly urged that the stipulation in question is not binding upon the successors of the Pacific Improvement Company, and does not inure to the successor of the grantors, our opinion remains unchanged, and ought not to be misunderstood. The assigns of the grantee are expressly named in the deed, and whatever right the grantors had to protect their interest in the land passed by their conveyance of the land to their grantee. Their estate was alienable, and the right to sell an estate includes the right to transfer the means of protecting it.

Our decision rests, of course, upon the case as presented in the record before us. If there are other facts or circumstances proof of which would have a legitimate bearing upon the true construction of the deed to the Pacific Improvement

Company, nothing we have said will prevent the defendant from alleging and proving such facts.

The judgment of the superior court is reversed.

SLOSS, J.—I concur in the judgment. What the plaintiff's rights would have been if the deed had contained no provision limiting the grantee's right to take rock is a question not involved in this case, and I express no opinion upon it. It is enough to say that the deed under which the defendants hold did restrict the right of the grantee and its successors in interest to do certain acts destructive of the substance of the estate, and that this estate might, on breach of a condition subsequent, revert to the grantor. Such restrictions may lawfully be annexed to the conveyance of an interest less than an unqualified fee, and will be enforced at the suit of the holder of the future estate. (*Blake* v. *Peters,* 1 DeG. J. & S. 345.)

Henshaw, J., Angellotti, J., Shaw, J., and Lorigan, J., concurred.

McFARLAND, J.—I dissent, and think that the judgment should be affirmed.

The following is the original opinion rendered upon the former hearing in Bank, May 24, 1906:—

SHAW, J.—Since the taking of this appeal the plaintiff has died, and Spiro B. Radovich, as the executor of his last will, has been substituted as plaintiff in his stead. The appeal is by plaintiff from a judgment in favor of the defendants, upon the sustaining of a demurrer to the complaint based on the ground that the complaint does not state a cause of action. The action purports to be for damages caused by the removal of rock from certain land, and to enjoin further waste of the same character. On April 25, 1888, Declez and Beaudry were the owners in fee simple of the land in question, the same being a part of section 35, township 1 south, range 6 west, San Bernardino base and meridian. They also apparently owned the entire section, or a considerable part thereof. On or near to this section were certain stone quarries known as the "Declez Quarries," but whether or not Declez and Beaudry had any

interest therein does not appear. On the day mentioned they executed to the Pacific Improvement Company a deed, conveying to said company certain strips of land in said section, to be used as ways for a railroad connecting said quarries with the main line of the Southern Pacific Railroad from Los Angeles to Yuma, and certain spur tracks necessary for the convenient working of the quarry, and also the tract from which the defendants are now taking rock, which tract contains seven acres of land. The conveyance of this seven-acre tract of land was expressly made subject to certain limitations, upon the effect of which the plaintiff's right of action depends. After the execution of this deed the Pacific Improvement Company conveyed all its right, title, and interest thereunder to the defendant, the Southern Pacific Railroad Company, and the plaintiff became, and still is, the owner in fee simple (but subject to the rights of the defendant under the deed of Declez and Beaudry to the Pacific Improvement Company) of all the lands described in said deed, including the seven-acre tract. The California Construction Company is building for the United States the breakwater in the harbor at San Pedro, and for that purpose, by agreement with the Southern Pacific Railroad Company, is quarrying and removing rock from the seven-acre tract, and using the same in the construction of the breakwater. The plaintiff in this action seeks to recover damages for the rock that has been taken from this tract for that purpose, and to enjoin the further taking thereof for such purpose.

The right of the defendants to take this rock, and of the plaintiff to maintain this action, depends on the effect of certain clauses of the deed of Declez and Beaudry to the Pacific Improvement Company. This deed first conveys the strips of land intended for the rights of way. Then follow the paragraphs purporting to convey the seven-acre tract and the qualifying clauses. This part of the deed is as follows:—

"And the said parties of the first part also grant and convey unto the said party of the second part a tract of land in said section 35, described as follows: [Here is described the seven-acre tract in controversy.]

"The conveyance of the tract of land last-above described to

the party of the second part is for the purpose and with the limitation that the rock and material taken therefrom by the party of the second part or by its lessees or assigns is for railroad purposes, and the party of the second part or its lessees or assigns is not to carry on the business of furnishing rock for any other purpose than that of railroad purposes, or for such purposes and in such business as the party of the second part may be engaged.

''This conveyance is made to the party of the second part on condition that the said party of the second part shall construct a railroad from the main line hereinbefore described within two years from the date hereof, and shall operate the same; and in the event that said railroad is not constructed within the time above mentioned, or if the said party of the second part shall fail to operate said railroad or abandon the same as a railroad, then and thereupon the estate hereby granted shall be forfeited to the parties of the first part, their heirs or assigns, and this conveyance shall become null and void.

''This conveyance is made for the purpose and to the end that a railroad shall be constructed and operated over the line aforesaid from the main track of the Southern Pacific Railroad to the quarries herein mentioned, and that the same be completed and operated within two years from this date.''

The plaintiff claims that the effect of the qualifying clauses quoted is to limit or qualify the estate which would otherwise pass by the words ''grant and convey,'' so that the estate actually transferred is not a fee simple, but a fee qualified by the limitation that the grantee, or its lessees or assigns, shall have no right to remove from the seven acres any rock, except such as should be found necessary or convenient for the building or maintenance of railroads, or for use in some other business in which the grantee might engage; that the provision for a forfeiture upon the violation of the condition subsequent, in effect, reserved to the grantor a contingent estate in the land granted, which could be, and has been, transferred to the plaintiff, and that the ownership of this estate in the land invests the plaintiff with a right to enjoin the taking of rock therefrom for any other purposes than those specified in the limitation. The defendants contend that the limitation

clause does not purport to withhold from the grantee the right to take rock from the land in such quantity as it should choose, even extending to all the rock therein contained, but that it merely limits and restricts the uses to which such rock may be devoted after it is removed; that it is a purely personal covenant, binding only upon the Pacific Improvement Company, and not upon its assigns; that' it does not run with the land, and that, in effect, it is a provision that the grantee shall not use rock taken from the land, except for certain purposes, and is a restriction repugnant to the estate conveyed by the granting clause, and therefore void; and hence that the Southern Pacific Railroad Company cannot be enjoined from the removal of any or all of the rock, and, being a grantee of the Pacific Improvement Company, it is not liable in damages in an action on the covenant, which binds no one but the original parties.

A reservation or exception in a grant is to be interpreted in favor of the grantor.   (Civ. Code, sec. 1069; Code Civ. Proc., sec. 1864; *Martin* v. *Lloyd,* 94 Cal. 203, [29 Pac. 491]; *Sears* v. *Ackerman,* 138 Cal. 586, [72 Pac. 171].)   The rules of interpretation in such cases are well stated in *Barnett* v. *Barnett,* 104 Cal. 300, [37 Pac. 1050], as follows: "A grant is to be interpreted in the same manner as any other contract (Civ. Code, sec. 1066), so as to give effect to the intention of the parties, if it can be ascertained (sec. 1636), and, for the purpose of ascertaining that intention, 'the whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other' (sec. 1641). . . . The rule that, if the *habendum* is repugnant to the premises, it is to be disregarded, is only another form of the rule that, 'if several parts of a grant are absolutely irreconcilable, the former part prevails' (Civ. Code, sec. 1070).   The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, are to be considered, and, if it appear from such consideration that the grantee intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause, the *habendum* clause

will prevail over the granting clause. It is in such case to be considered as an *addendum* or proviso to the conveyancing clause, which, by a well-settled rule of construction, must control the conveyancing clause or premises, even to the extent of destroying the effect of the same.'' In other cases it is said that ''The tendency of modern decisions is to uphold conveyances, and give effect to the intention of the parties, regardless of technical rules of construction.'' (*Faivre* v. *Dailey,* 93 Cal. 671, [29 Pac. 258].) ''It matters little what name we give to the rights reserved to the grantor in a deed. Attempts to create symmetry in the law by classification and designation of classes of different kinds of rights connected with, and springing out of, lands are always hazardous'' (*Painter* v. *Pasadena etc. Co.,* 91 Cal. 84, 85, [27 Pac. 542]); and ''to arrive at this intention, the situation of the parties and the subject-matter at the time of contracting should be considered.'' (*Stockton* v. *Weber,* 98 Cal. 439, [33 Pac. 334]; *Brannan* v. *Mesick,* 10 Cal. 106.) The clause immediately following the description of the seven acres, which we designate as the limitation clause, is loosely and awkwardly drawn, and discloses the work of one not skilled in the use of language nor familiar with technical definitions. Upon a consideration of the whole instrument and the circumstances appearing therefrom, the intention of the parties is not difficult to ascertain. The main object of the grantors, which is expressed in the last clause, was to secure railroad transportation to the Declez quarries, and the other clauses manifest a clear purpose to give nothing not necessary to attain that object. They were careful to insert a provision forfeiting the granted estate upon the failure to build the road within two years, or to operate it thereafter, so that, upon failure to secure the object, the grantors would lose nothing and the grantee would obtain nothing. The seven acres were manifestly demanded by the grantee in order to get rock therefrom for use in its business of railroad construction. The purpose of the limitation clause, though awkwardly expressed, was to define and restrict this right as the parties understood it to be given. It qualifies the grant for the benefit of the grantors, and consequently is, in effect, a reservation to be interpreted in their favor. The design was, in part at least, to protect the contingent estate so that, if it became vested, the grantors would not find it

stripped of the rock not required for the uses allowed.    To
construe it as providing that all the rock could be removed
by the grantee, but that, when removed, no use could ever be
made of any of it, except the limited use mentioned, so that
the remainder could be taken for no purpose at all, except
to violate the agreement, or wantonly to injure the grantors,
would render the clause, to that extent, foolish, ridiculous,
and vicious.    A construction producing such results is to be
avoided if any other reasonable meaning is possible.    In view
of the objects to be accomplished, the provision that "the
conveyance is for the purpose and with the limitation that
the rock taken from the land by the grantor is for railroad
purposes," may reasonably be understood to have been in-
tended to prohibit the taking of rock for any other purpose.
The doctrine that where the *habendum*, or other subsequent
clause, is repugnant to the premises, the premises must pre-
vail, applies only where the two are irreconcilable.    And it
does not apply where it appears from the whole conveyance,
or from the language of the subsequent clause, that the
grantor intended thereby to qualify the granting clause, or
where the grantee will receive an estate of value even if the
granting clause be modified as may be necessary to give
effect to all parts of the deed.    (*Barnett* v. *Barnett*, 104 Cal.
300, [37 Pac. 1050] ; *Faivre* v. *Dailey*, 93 Cal. 671, [29 Pac.
258] ; *Morrison* v. *Wilson*, 30 Cal. 344; *Pellissier* v. *Corker*,
103 Cal. 518, [37 Pac. 465] ; 1 Devlin on Deeds, sec. 215a;
*Bodine* v. *Arthur*, 91 Ky. 53, [14 S. W. 904, 34 Am. St.
Rep. 162] ; *Fogarty* v. *Stack*, 86 Tenn. 610, [8 S. W. 846] ;
*Bassett* v. *Budlong*, 77 Mich. 338, [43 N. W. 984, 18 Am. St.
Rep. 404] ; *Gay* v. *Walker*, 36 Me. 54, [58 Am. Dec. 734] ;
*Cooney* v. *Hayes*, 40 Vt. 478, [94 Am. Dec. 425] ; *Cravens* v.
*White*, 73 Tex. 577, [11 S. W. 543, 15 Am. St. Rep. 803].)
The clause is therefore, in effect, a limitation upon the estate
of the grantee in the seven-acre tract to the extent that it
could not take rock therefrom except for the purpose therein
stated.    Hence it follows that the grantee had no right, as
against the grantors, to take the rock for the purpose of con-
structing a breakwater.

In support of the position that the limitation clause is a
mere personal covenant, binding on the Pacific Improvement
Company alone, the defendants rely on the decision in *Los*

*Angeles Terminal Land Co.* v. *Muir,* 136 Cal. 36, [68 Pac. 308]. The clause considered in that case followed a clause purporting to grant an estate in fee simple, and it was expressed in these words: "It is hereby covenanted and agreed by and between the parties hereto, that, in consideration of this conveyance, no saloon business or business of vending malt, vinous, or spirituous liquors, shall ever be carried on upon said lot, neither shall said lot be used for any business or store purpose other than for hotel, lodging-house or club purposes." It did not purport to be made by, or on behalf of, or for the benefit of, the assigns or lessees of either party, but ran to the parties only, and the deed contained no reservation to the grantor of any interest, conditional or otherwise, in the land granted. Herein it was essentially different from the instrument here in question. In that case the original grantee was not a party to the action, and the court, upon the point that the covenant was personal and binding on the grantee only, and hence not enforceable in equity against a subsequent grantee, say that the plaintiff in that case, who was the grantor, "could have inserted a covenant which would have inured to the protection of plaintiff's grantee or successor in interest, and would have expressly bound the yacht club [the grantee in the deed]. It did not do either, but contented itself with a covenant, in its terms purely personal, purporting to create a restriction upon the use of the property so long only as the vendee should retain the title, . . . and as there is no personal contract relation between the parties to this action, the plaintiff is not entitled to any relief against the defendants, unless the evidence shows with reasonable certainty that the use of the lot for ferry purposes would materially injure the remaining property of the plaintiff." In the present case the clause in question, treating it as a covenant not to take rock except for certain uses, expressly purports to bind the grantee, and also its lessees and assigns. There is also a condition subsequent whereby there is reserved to the grantor a contingent estate in the identical rock which the defendants are removing. This contingent estate is a species of property and may be transferred. (Civ. Code, sec. 699.) It has been transferred to the plaintiff, who, it is alleged, is now the owner thereof. There is therefore an existing contract relation and

privity of estate between the parties to the action. The removal of this rock, of necessity, will materially injure the value of the contingent estate in the land, and, being removed for a forbidden use, it constitutes sufficient ground for the interposition of equity. It is our opinion that the restrictive clause may be considered as a limitation in favor of the grantors upon the use of the estate granted, and against the grantee, its lessees, and assigns, made for the purpose of feeding and protecting the grantors' contingent estate reserved by the next succeeding clause of the deed, and that it is also a personal covenant binding on the successors in interest of the grantee, by which they are prohibited from removing the rock for the use they are making of it; and hence that they may be restrained from so doing. We do not consider the question whether or not the covenant was one which runs with the land to be material to the decision of the case.

The objection that the complaint does not show that the plaintiff is an heir or assign of the original grantors is not well taken. It alleges that the plaintiff is, and has been ever since November 10, 1900, the owner in fee simple of all the lands described in the deed in question, "subject only to the terms and provisions" of the said deed. This means that he is the owner of all the estate and rights reserved therein to the grantors. He could only become such owner by descent or purchase from the grantors or their successors in interest; and hence he is either an heir or assign. Respondents also contend that if the qualifying clauses of the deed are to be considered effectual to forbid the sale or other disposition of the rock taken from the seven acres, they constitute a contract in restraint of trade, and are void for that reason. This claim is based on the theory, which we hold untenable, that the deed does not forbid the quarrying or removal of rock, but only forbids certain uses of it after such removal. Where a grantor reserves a contingent estate in the land granted, and a condition or covenant is inserted in the deed forbidding the grantee from removing for certain uses a part of such realty, the removal of which would lessen the value of such contingent estate, such condition or covenant is a lawful contract for the protection of the grantor's interest, and cannot be deemed a contract in restraint of trade. By the terms of the cov-

CL Cal.—4

enant the parties are not to be restrained from engaging in the business of quarrying or selling rock in general, but only from taking for that purpose certain rock in which the plaintiff has an interest.

It is further contended that an action to recover damages for waste, or to restrain waste, cannot be maintained by one having only a contingent estate, to become vested only upon a forfeiture for a violation of a condition subsequent. So far as the claim for damages for waste already committed, based upon the ownership by the plaintiff of such contingent estate, is concerned, this contention must be sustained. The plaintiff's interest is not vested (Civ. Code, secs. 693, 695); and hence he has no present property in the rock removed, for the value of which damages can be computed, or to which he could have the right of present possession. (*Hunt* v. *Hall,* 37 Me. 363; *Peterson* v. *Clark,* 15 Johns. 205; *Sager* v. *Galloway,* 113 Pa. St. 500, [6 Atl. 209]; *Brashear* v. *Macey,* 3 J. J. Marsh. 93; *Cannon* v. *Barry,* 59 Miss. 289; *Gordon* v. *Lowther,* 75 N. C. 193.) But the rule is different with regard to the equitable remedy by injunction. The owner of a contingent interest may protect that interest against deterioration or destruction by enjoining a threatened waste. This is well settled by the authorities. (*Hayward* v. *Stillingfleet,* 1 Atk. 422; *Robinson* v. *Litton,* 3 Atk. 209; *Brashear* v. *Macey,* 3 J. J. Marsh. 93; *Cannon* v. *Barry,* 59 Miss. 289; *Miles* v. *Miles,* 32 N. H. 147, [64 Am. Dec. 362]; *Petersen* v. *Ferrell,* 127 N. C. 169, [37 S. E. 189]; *Cowand* v. *Meyers,* 99 N. C. 198, [6 S. E. 82]; *Gordon* v. *Lowther,* 75 N. C. 193; *Braswell* v. *Morehead,* 45 N. C. 26, [57 Am. Dec. 586]; *Lewisburg University* v. *Tucker,* 31 W. Va. 621, [8 S. E. 410].) It comes within the rule that an injunction will be granted to prevent an injury to real property which consists of the removal or destruction of the substance of the estate, or where the party injured cannot be adequately compensated in damages, or where the resulting damages cannot be measured by any certain pecuniary standard. (*Richards* v. *Dower,* 64 Cal. 63, [28 Pac. 113]; *Silva* v. *Garcia,* 65 Cal. 592, [4 Pac. 628]; *More* v. *Massini,* 32 Cal. 595; 16 Am. & Eng. Ency. of Law, 361.)

With respect to the breach of the covenant not to take rock, except for the permitted purposes, the breach of such a con-

tract, of itself, constitutes a cause of action for at least nominal damages.    Whether, in view of the nature of the plaintiff's interest, anything more can be recovered, is a question not discussed by counsel, and, as it is not necessary to the decision of the case, we express no opinion in regard to it.

From the conclusions we have reached, it necessarily follows that the demurrer should have been overruled.

The judgment is reversed.